# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE RESTASIS (CYCLOSPORINE OPHTHALMIC EMULSION) ANTITRUST LITIGATION | MDL No. 2819<br><br>18-MD-2819 (NG) (LB) |
| This Document Relates To:  All Class Cases | |

## PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS <u>WITHHELD AS PRIVILEGED</u>

## FILED UNDER SEAL PURSUANT TO THE STIPULATED CONFIDENTIALITY ORDER (ECF NO. 68)

# REDACTED

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 3

III.    ARGUMENT ...................................................................................................... 6

        A.    Allergan Has Waived Privilege for Communications with Third Parties.............. 6

              1.    Allergan's communications with third party Lachman Consultants are
                    not privileged. ............................................................................................ 7

              2.    Allergan's communications with third party ADC Strategies are not
                    privileged. .................................................................................................. 8

        B.    Allergan Must Produce Non-Privileged Communications Relating to the
              Citizen Petitions. ................................................................................. 11

              1.    Allergan must produce communications involving no legal advice
                    between and among Allergan's business people about the petitions,
                    draft petitions, or FDA's responses. ........................................................... 11

              2.    Allergan must produce communications about facts and information
                    Allergan possessed that supported or undercut positions it took in its
                    citizen petitions, including communications about whether to submit
                    such information to FDA. ....................................................................... 13

        C.    Allergan's Proposed Subject Matter Waiver Stipulation Is Unworkable and
              Too Late ................................................................................................. 14

IV.     CONCLUSION ................................................................................................. 16

        CERTIFICATE OF SERVICE ............................................................................ 18

i

# TABLE OF AUTHORITIES

**Cases**

*Alabama Aircraft Indus., Inc. v. Boeing Co.*
  2016 WL 9781826 (N.D. Ala. Mar. 24, 2016) ........................................................... 11

*Allen v. West Point–Pepperell Inc.*
  848 F. Supp. 423 (S.D.N.Y. 1994) .............................................................................. 2

*B.C.F. Oil Ref., Inc. v. Consol. Edison Co. of New York*
  168 F.R.D. 161 (S.D.N.Y. 1996) ................................................................................. 2

*Bria v. United States*
  2002 WL 663862 (D. Conn. Mar. 26, 2002) ............................................................... 13

*Chevron v. Donziger*
  2013 WL 4045326 (S.D.N.Y. Aug. 9, 2013) ............................................................... 10

*Citigroup Mortgage Loan Trust 2007-ACM3 v. Citigroup Global Mkts. Realty Corp.*
  2016 U.S. Dist. LEXIS 185289 (S.D.N.Y. Dec. 7, 2016) ........................................... 7

*Egiazaryan v. Zalmayev*
  290 F.R.D. 421 (S.D.N.Y. 2013) ................................................................................. 7

*Export-Import Bank of the U.S. v. Asia Pulp & Paper Co.*
  232 F.R.D. 103 (S.D.N.Y. 2005) ................................................................................. 7

*Fine v. ESPN, Inc.*
  2015 WL 3447690 (N.D.N.Y. May 28, 2015) ............................................................. 7

*Green v. Beer*
  2010 WL 3422723 (S.D.N.Y. Aug. 24, 2010) ............................................................. 11

*Green v. Beer*
  2010 WL 2653650 (S.D.N.Y. July 2, 2010) ................................................................ 11

*In re County of Erie*
  473 F.3d 413 (2d Cir. 2007) ........................................................................................ 11

*In re Prograf Antitrust Litig.*
  2013 WL 1868227 (D. Mass. May 3, 2013) ................................................................ 13

*In re Six Grand Jury Witnesses*
  979 F.2d 939 (2d Cir. 1992) ........................................................................................ 13

*Safeco Ins. Co. of Am. v. M.E.S., Inc.*
  289 F.R.D. 41 (E.D.N.Y. 2001) ............................................................. 10

*Schanfield v. Sojitz Corp. of Am.*
  258 F.R.D. 211 (S.D.N.Y. 2009) ............................................................. 6

*Sol v. Whiting*
  2014 WL 12526316 (D. Ariz. Jan. 31, 2014) ........................................ 11

*Swift Spindrift, Ltd. v. Alvada Ins., Inc.*
  2013 WL 3815970 (S.D.N.Y. July 24, 2013) ........................................ 15

*Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*
  2002 WL 31556383 (S.D.N.Y. Nov. 15, 2002) ..................................... 10

*Upjohn Co. v. United States*
  449 U.S. 383 (1981) ............................................................................ 2, 13

*Veleron Holding, B.V. v. BNP Paribas SA*
  2014 WL 4184806 (S.D.N.Y. Aug. 22, 2014) ........................................ 12

**Rules**

Fed. R. Civ. P. 26 ................................................................................. 3, 14

Fed. R. Evid. 502 ............................................................................... passim

**Other Authorities**

The Sedona Conference, Commentary on the Protection of Privileged ESI
  17 Sedona Conf. J. 12 (2016) ............................................................... 15

## I.    INTRODUCTION

The purchaser plaintiffs move to compel production of three discrete categories of documents that Allergan has withheld as privileged:

1) Communications and documents shared with non-parties, including Lachman Consultants and ADC Strategies, thus waiving any privilege protection that may have applied.

2) Communications between and among Allergan's business people about the citizen petitions, draft petitions, or the FDA's responses, for business purposes that do not involve legal advice.

3) Communications about facts and information Allergan possessed that supported or undercut positions it took in its citizen petitions, including communications about whether to submit such information to the FDA.

Allergan has not provided any legitimate basis for its continued withholding of these categories of documents as privileged. The plaintiffs seek an order directing Allergan to produce all non-privileged documents that fall within these three categories as further described below. Given the fast-approaching fact discovery cutoff in this case, the plaintiffs request those productions within two weeks of the Court's order.

Since early in this case, the plaintiffs have pushed Allergan to timely produce its final privilege logs, since the late production of privilege logs and resolution of attendant challenges can threaten to derail the case schedule. The parties agreed at the outset to a process governing the assertion of privilege and challenges to those assertions. For nearly two months, the plaintiffs have been diligently trying to engage with Allergan on specific categories of documents that Allergan has withheld as privileged. Allergan's response has been to drag its heels, to object to the plaintiffs' efforts to address documents on a categorical basis, to demand that the plaintiffs stipulate that Allergan's productions do not give rise to subject matter waiver, and to otherwise avoid taking concrete positions as to whether documents are in fact privileged. At the same time, when Allergan has responded to plaintiffs' challenges, Allergan has agreed to produce most of

1

the challenged documents. This has unnecessarily multiplied and delayed the proceedings and prejudices plaintiffs' ability to take and complete necessary discovery in a timely manner. Accordingly, the plaintiffs request an order directing Allergan to produce documents that fit within the following three categories.

**First**, it is axiomatic that disclosure to a third party waives any attorney-client privilege where the third party is not necessary to the provision of legal advice. Allergan has redacted or withheld as privileged numerous documents disclosed to Lachman Consultants (a regulatory affairs consulting firm) and ADC Strategies (a policy consulting firm). Allergan has not shown or explained how the communications with the consultants were necessary to the provision of legal advice and has conceded that at least two of these documents are not privileged. Allergan should be ordered to produce the balance of the communications with these third parties.

**Second**, communications among Allergan's business personnel for business purposes that contain no legal advice are, by definition, not privileged. The plaintiffs identified seven examples of such communications on Allergan's privilege log in their November 19 letter (repeating many examples from their October letter). Allergan has already agreed to produce six of these documents, thus conceding that non-privileged documents of this type are included in its privilege log, and now should be ordered to produce the others like them.

**Third**, facts and information about the citizen petitions—including communications reflecting facts and information that undercut the positions Allergan took in its citizen petitions—are not privileged.[1] Allergan agreed to produce a sample document in this category

---

[1] *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981); *B.C.F. Oil Ref., Inc. v. Consol. Edison Co. of New York*, 168 F.R.D. 161, 165 (S.D.N.Y. 1996) ("'[T]he [attorney-client] privilege does not protect facts which an attorney obtains from independent sources and then conveys to his client.'") (quoting *Allen v. West Point–Pepperell Inc.*, 848 F. Supp. 423, 427-428 (S.D.N.Y. 1994)) (second alteration in original).

that the plaintiffs identified. The plaintiffs request an order directing Allergan to promptly produce other non-privileged documents in the same category.

Allergan has said that it will produce certain "borderline privileged" documents in the interest of avoiding disputes, but *only if* plaintiffs stipulate that the production does not give rise to subject matter waiver. Allergan may not hold these non-privileged documents hostage, as the federal rules supply the requisite framework and Allergan's proposed stipulation is an improper and unworkable half-step. Among other things, it raises serious concerns about selective disclosure and likely sets the stage for additional collateral disputes regarding the proposed stipulation. Allergan should respond to the plaintiffs' remaining challenges and, given the fast-approaching close of fact discovery in this matter, produce non-privileged documents without further conditions or delay.

## II.   BACKGROUND

The Federal Rules require parties withholding otherwise discoverable documents on privilege grounds to "(i) expressly make the claim" and "(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."[2] The Rules likewise explain that if a party inadvertently discloses privileged information, "the disclosure does not operate as a waiver in a federal . . . proceeding."[3] The

---

[2] Fed. R. Civ. P. 26(b)(5).

[3] Fed. R. Evid. 502(b) ("When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver . . . if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).").

3

Rules also provide that "a federal court *may* order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court."[4]

In April 2018, at the beginning of discovery, the parties conferred extensively about a privilege protocol, confidentiality order, and a case schedule.[5] Allergan advocated for an order under Federal Rule of Evidence 502(d), which provides that a court *may* enter a "non-waiver" order. The plaintiffs opposed, as that standard leaves open the possibility of substantial confusion and unfairness, for example where a defendant will assert privilege and claw back documents on the fly, including when the previously non-privileged documents are used in depositions or at trial, and raises significant risks of selective disclosure. The plaintiffs explained that a non-waiver provision would leave them in the untenable and uncertain position of not knowing what Allergan considered to be privileged and not privileged at any point in time. The parties ultimately compromised on procedures for handling inadvertent disclosure of privileged documents.[6] The stipulated order notes that under Federal Rule of Evidence 502(b), inadvertent disclosure will not operate as waiver.[7]

With regard to the case schedule, the timeline for production of privilege logs was a major topic of discussion. Knowing that the resolution of privilege issues arising from the late production of privilege logs can delay fact discovery and attendant proceedings, the plaintiffs pushed for an early deadline for Allergan to produce *final* privilege logs. Under Case Management Order No. 2, Allergan was required to produce its "initial" privilege log by August

---

[4] Fed. R. Evid. 502(d) (emphasis added).

[5] Declaration of Dena Sharp ("Sharp Decl.") ¶ 2.

[6] *See* Stipulated Confidentiality Order, ECF No. 58, entered by the Court on April 26, 2018.

[7] *Id.* at 11-12.

24 and its "complete" privilege log by October 6, 2018.[8] At a hearing on July 26, the Court ordered additional searches, and Allergan afterward said that it needed time to produce a privilege log corresponding to the additional searches the Court ordered.[9] The Court granted another motion to compel on October 18, and Allergan has said it will produce the documents subject to that motion on December 14 and will provide a related privilege log by the end of December.[10] The result is that the plaintiffs still do not have a complete production of documents or complete privilege logs. Discovery, particularly depositions, may be delayed as a result.

On October 12, 2018, based on a diligent and careful review of the log entries Allergan had provided to date, the plaintiffs sent Allergan a letter challenging several categories of privilege claims in Allergan's privilege logs.[11] The letter cited specific examples in each category, including communications related to the FDA's June 2013 draft guidance and Allergan's citizen petitions and documents disclosed to specific third parties. The plaintiffs also requested clarification regarding certain entries in the privilege log in the underlying patent case. Two weeks later, Allergan responded, taking the position that it was not able to provide specific responses to every challenged document because of the number of documents at issue, and that it was continuing to investigate the challenged documents and privilege issues raised by plaintiffs. Allergan did say that it would be willing to produce some challenged documents—but only if the plaintiffs agreed that production of the challenged documents would not give rise to a subject matter waiver.[12]

---

[8] *See* Case Management Order No. 2, ECF No. 77, entered May 7, 2018.

[9] Sharp Decl. ¶ 3.

[10] *Id.*

[11] Sharp Decl., Ex. A.

[12] Sharp Decl., Ex. B.

On October 29, the parties met and conferred. On November 1, Allergan sent a draft of a proposed "no subject matter waiver" stipulation. The plaintiffs again expressed concerns about the proposed stipulation (especially in light of the parties' agreement to forego Allergan's request for entry of a "no waiver" Rule 502(d) order back in April), but took Allergan's position under advisement.

Having received no further substantive response from Allergan, on November 19, the plaintiffs sent another letter, this time explaining that they wished to prioritize a few key issues.[13] The letter identified thirteen sample privilege log entries/documents, most of which had been challenged in the plaintiffs' October 12 letter. The plaintiffs explained that they sought a response to these discrete issues in advance of the Court's December 6 deadline to submit motions to be heard at the December 19 conference. The following week, Allergan agreed to produce nine of the thirteen documents at issue and declined to produce the others unless the plaintiffs entered into Allergan's "no subject matter waiver" stipulation. After careful consideration, the plaintiffs declined the stipulation[14] and declared impasse on the disputed documents.[15]

## III.    ARGUMENT

### A.    Allergan Has Waived Privilege for Communications with Third Parties.

"It is well-established that voluntary disclosure of confidential material to a third party waives any applicable attorney-client privilege."[16] The third-party waiver rule is subject to an

---

[13] Sharp Decl., Ex. C.

[14] Sharp Decl. ¶ 6.

[15] Allergan's production of documents and privilege logs, and plaintiffs' review of the logs already produced, are ongoing. The plaintiffs will bring additional privilege disputes to the Court's attention as they arise.

[16] *Schanfield v. Sojitz Corp. of Am.*, 258 F.R.D. 211, 214 (S.D.N.Y. 2009).

exception where the party asserting the privilege demonstrates that the client has "a reasonable expectation of confidentiality" and that the disclosure was "necessary for the client to obtain informed legal advice."[17] The "necessary" component requires that the third party's involvement be "nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications."[18] Privilege may also apply where the third-party acts as an intermediary-translator or interpreter for the attorney; the third party's provision of "advice" in its area of expertise is not otherwise privileged.[19] Allergan has not shown that the exception applies.

1. **Allergan's communications with third party Lachman Consultants are not privileged.**

In their October 12 letter, the plaintiffs challenged all communications between Allergan and Lachman Consultants on the ground that third-party disclosure waived any attorney-client privilege. The employees of Lachman Consultants are not lawyers. They do not provide legal advice. According to its website, Lachman Consultants offers compliance and regulatory affairs consulting services, not legal services.[20] ███████████████████

████████████████████████████████████

████████████████████████

---

[17]  *Fine v. ESPN, Inc.*, No. 5:12-CV-0836 LEK/DEP, 2015 WL 3447690, at *10 (N.D.N.Y. May 28, 2015) (quoting *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 431 (S.D.N.Y. 2013)); *see also Citigroup Mortgage Loan Trust 2007-ACM3 v. Citigroup Global Mkts. Realty Corp.*, 2016 U.S. Dist. LEXIS 185289, at *7 (S.D.N.Y. Dec. 7, 2016) (third party must be necessary to provision of legal advice).

[18]  *Fine*, 2015 WL 3447690, at *10.

[19]  *E.g.*, *Export-Import Bank of the U.S. v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 113 (S.D.N.Y. 2005) (privilege waived where consultant "was a major participant in [the party's] financial affairs, not a mere interpreter").

[20]  *See About – Lachman Consultants*, http://www.lachmanconsultants.com/about/ (last visited Dec. 3, 2018).

In an October 26 letter, Allergan said that it "believes that the information contained in its privilege log and the factual context revealed in the non-redacted portions of email chains containing redactions is sufficient to meet its burden to show that the relevant third-party communications fall within the scope of the privilege" and that it was conducting further investigation. The letter provides no factual basis for this assertion. Likewise, the privilege log does not explain how the personnel at Lachman Consultants were necessary to the provision of legal advice or otherwise fall within the scope of the privilege. Having heard nothing further on the issue by mid-November, plaintiffs prioritized in their November 19 letter two specific communications with Lachman Consultants, which Allergan then conceded were not privileged and agreed to produce.[21] Allergan has not shown how any other communications with Lachman Consultants were necessary for the provision of legal advice or are different from the two communications that Allergan has conceded were not privileged.

Accordingly, plaintiffs request entry of an order directing Allergan to produce all remaining communications with Lachman Consultants because disclosure to this third party waived any applicable attorney-client privilege.

### 2. Allergan's communications with third party ADC Strategies are not privileged.

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████[22] As above, ADC Strategies's employees are not lawyers. They do not provide legal services. According to his biography on the ADC Strategies website and his LinkedIn profile, Mr. Hanford has a law degree, but he has not practiced law for over thirty

---

[21] Sharp Decl. ¶ 8.

[22] Sharp Decl., Ex. D, at AGN-RESANT-05337561; Sharp Decl., Ex. E, at AGN-RESANT-05334719 – AGN-RESANT-05334720.

8

years.[23] Instead, he focuses on policy, lobbying, and government affairs—Mr. Lively's areas of expertise. Allergan appears to have hired him for these services, not the services of a lawyer. It is unsurprising then that Mr. Hanford was not marked as a lawyer in Allergan's privilege logs. Nothing in the unredacted portions of the emails or the privilege log suggests that the communications were necessary for the provision of legal advice.

In the October 12 letter, plaintiffs challenged Allergan's privilege claims as to communications with ADC Strategies generally, and asked Allergan to explain its basis for the claims. Having received no meaningful response more than a month later, plaintiffs in the November 19 letter prioritized the two emails now at issue, each of which is described on Allergan's privilege log as an "email chain containing legal advice of counsel regarding" the petition and the FDA's guidance.[24] When pressed in the November 29 meet and confer, Allergan's counsel stated that Tim Hanford is a lawyer (though he is not denoted as such on Allergan's privilege logs) and suggested that he may have been retained for the purpose of providing legal advice, but also stated that Allergan's counsel had not yet reviewed the retention agreement with ADC Strategies.

Allergan on December 1 stated that Mr. Hanford provided "legal advice and deep knowledge of congressional and federal agency practices."[25] But the next day, Allergan's counsel took another course, stating that Allergan takes the position that Mr. Hanford actually did not provide legal advice, and that he was instead retained to "evaluate legal developments

---

[23] *See ADC Strategies LLC*, http://adcstrategies.com (last visited Dec. 3, 2018); *Tim Hanford*, LinkedIn, https://www.linkedin.com/in/tim-hanford-a778b11/ (last visited Dec. 3, 2018).

[24] Sharp Decl., Ex. F.

[25] Sharp Decl., Ex. G.

and relay information and advice on public-facing legal issues."[26] Allergan asserted that the specific documents the plaintiffs had challenged reflecting Allergan's request for Mr. Hanford's views on "legal issues," and that his input was incorporated into the "legal advice" of Allergan's counsel.[27]

Allergan's explanations are insufficient to establish an exception to the rule that the attorney-client privilege protects communications between attorneys and clients. Allergan's explanations—set forth not on any privilege log, but instead in emails sent over the weekend preceding the submission of this brief—are insufficient to demonstrate the exception.[28] Allergan is required to describe the specific subject and purpose of the communications to establish that they were *necessary* for the provision of legal advice, which it has not done.[29] Allergan cannot satisfy its burden by simply invoking the phrases "legal issues" and "legal advice."[30] And a review of the retention agreements between ADC and Allergan (which Allergan only provided on Sunday, December 2 after 10 p.m. Eastern time and on Monday, December 3—nearly eight weeks after the plaintiffs first challenged Allergan's privilege assertions as to communications with ADC) shows that ████████████████████████████████████████

---

[26] *Id.*

[27] *Id.*

[28] *Cf. Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, No. 01 CIV. 3016 (AGS)(H), 2002 WL 31556383, at *2 (S.D.N.Y. Nov. 15, 2002) (rejecting a changed explanation of a privilege claim because the party "should have ascertained the correct facts prior to serving its index of withheld documents").

[29] *See Chevron v. Donziger*, 2013 WL 4045326, at *2 (S.D.N.Y. Aug. 9, 2013) ("[T]he log must provide information about the nature of the withheld document sufficient to enable the receiving party to make an intelligent determination about the validity of the assertion of privilege." (internal quotation marks and brackets omitted)).

[30] *See Safeco Ins. Co. of Am. v. M.E.S., Inc.*, 289 F.R.D. 41, 48 (E.D.N.Y. 2001) ("Focusing on the descriptive portion of the log and ignoring conclusory labels" and finding logs to be insufficient to support the privilege claim).

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████[31] Communications concerning Allergan's legislative and

policy agenda and lobbying efforts are not privileged,[32] nor does the fact that information was

"valued" by Allergan's attorneys suggest that it was necessary to the provision of legal advice.[33]

### B.     Allergan Must Produce Non-Privileged Communications Relating to the Citizen Petitions.

#### 1.     Allergan must produce communications involving no legal advice between and among Allergan's business people about the petitions, draft petitions, or FDA's responses.

Communications among Allergan's business people about the petitions, draft petitions, or

FDA's responses that contain no legal advice are by definition not privileged. Of the seven

privilege log examples in this category that the plaintiffs identified in their November 19 letter,

Allergan has agreed to produce all but one of the challenged documents. This high rate of non-

privileged communications among the documents that plaintiffs have challenged suggests that

there are other non-privileged communications that Allergan has withheld. To the extent there

are documents among business people about the petitions, draft petitions, or FDA's responses

---

[31] Sharp Decl., Ex. H.

[32] *In re County of Erie,* 473 F.3d 413, 421 (2d Cir. 2007) ("When an attorney is consulted in a capacity other than as a lawyer, as (for example) a policy advisor, media expert, business consultant, banker, referee or friend, that consultation is not privileged."); *Alabama Aircraft Indus., Inc. v. Boeing Co.*, 2016 WL 9781826, at *3 n.6 (N.D. Ala. Mar. 24, 2016) (lobbyist background as a lawyer is "of no moment in [a] privilege analysis" where the lawyer was providing lobbying advice); *Sol v. Whiting*, 2014 WL 12526316, at *2 (D. Ariz. Jan. 31, 2014) (communications concerning "policy advice" and "lobbying efforts" not privileged).

[33] *See Green v. Beer*, No. 06 CIV. 4156 KMW JCF, 2010 WL 2653650, at *4 (S.D.N.Y. July 2, 2010) (holding that two individuals whose functions were "helpful" were not "necessary to the provision of legal advice"), rev'd in part on other grounds, No. 06 CIV.4156 KMW/JCF, 2010 WL 3422723 (S.D.N.Y. Aug. 24, 2010).

that Allergan actually believes are privileged, Allergan has had ample time to substantiate its privilege claims for communications involving no legal advice among its business people, but it has not done so. Allergan should review the documents that it has withheld as privileged and produce all documents in this category.

Allergan has objected to the plaintiffs' efforts to resolve privilege disputes like this one on a categorical basis. But where "a class of documents share a common characteristic, they may be challenged on the basis of that characteristic."[34] While the Stipulated Privilege Protocol refers to "challeng[ing] the privilege designation of any document,"[35] it does not describe how documents must be identified.[36] And it serves no purpose to list, for example, every single privilege log entry for non-legal communications among business people, rather than identify exemplars and challenge all such communications. In fact, plaintiffs' approach is not only consistent with Rule 26 but will serve to make resolution of privilege issues more efficient and less burdensome.

By taking a "document-by-document" approach, Allergan tries to shift the burden of identifying specific deficient privilege log entries to the plaintiffs, with the result that Allergan reviews and produces documents one at a time, rather than addressing and resolving overarching

---

[34] *Veleron Holding, B.V. v. BNP Paribas SA*, No. 12-5966, 2014 WL 4184806, at *3 (S.D.N.Y. Aug. 22, 2014).

[35] ECF No. 78 at 6.

[36] Allergan has also sought to inconsistently apply the Stipulated Privilege Protocol.  In response to plaintiffs' October 12 letter, Allergan said that the Protocol did not apply to "categorical challenges," instances where plaintiffs challenged a large number of specific documents, or where a party's log was still a "work in progress." But when plaintiffs sent their November 19 letter identifying a small set of documents that they intended to move to compel on, Allergan switched horses, arguing that the Protocol applies and that there was not enough time under the Protocol for issues to be sufficiently ripe to meet the December 6 briefing deadline. Allergan may not decline to follow the Protocol when it suits them, but invoke the Protocol to prevent plaintiffs from briefing issues they have been trying to address with Allergan for several weeks.

12

privilege issues. But of course it is Allergan that bears the burden of substantiating its privilege claims. The approach is particularly misplaced here, where Allergan has agreed to produce nearly all of the exemplar documents plaintiffs have identified, suggesting the kind of underlying categorical problems with Allergan's privilege designations that it is Allergan's burden to avoid or remedy in the first instance.

> **2.      Allergan must produce communications about facts and information Allergan possessed that supported or undercut positions it took in its citizen petitions, including communications about whether to submit such information to FDA.**

As the Supreme Court has explained, the attorney-client privilege "does not protect disclosure of the underlying facts by those who communicated with the attorney."[37] The Second Circuit has made it clear that "[a]lthough an attorney-client communication is privileged and may not be divulged, the underlying information or substance of the communication is not . . . so privileged."[38] In other words, "[t]he attorney-client privilege applies to confidential communications, not to facts underlying those communications."[39] Communications from lawyers about citizen petitions that "pertain[] to business matters, including the petition's factual and technical content, objective merit, and timing of filing, are not privileged."[40]

The plaintiffs challenged the withholding of many documents that appeared to reflect facts that are material to Allergan's citizen petition positions. When plaintiffs prioritized one such document, Allergan conceded that it was not privileged. To reiterate, it is not incumbent in this circumstance on the plaintiffs to go through the privilege log on a document by document

---

[37] *Upjohn*, 449 U.S. at 395.

[38] *In re Six Grand Jury Witnesses*, 979 F.2d 939, 945 (2d Cir. 1992) (citation omitted).

[39] *Bria v. United States*, 2002 WL 663862, at *2 (D. Conn. Mar. 26, 2002).

[40] *In re Prograf Antitrust Litig.*, No. 1:11-MD-02242-RWZ, 2013 WL 1868227, at *2 (D. Mass. May 3, 2013).

basis guess which additional documents may likewise have been improperly withheld. It is instead Allergan's burden to produce documents reflecting facts, or to sufficiently explain why such documents are privileged.

Allergan has yet to substantiate its privilege claims for any communications reflecting non-privileged facts and information concerning the citizen petitions. As it has not done so, it should be ordered to produce all withheld documents in this category.

### C.   Allergan's Proposed Subject Matter Waiver Stipulation Is Unworkable and Too Late

Allergan has offered to produce the documents at issue here, as well as a significant number of other "borderline" privileged documents plaintiffs have challenged—but *only if* plaintiffs stipulate that the production does not give rise to subject matter waiver. Allergan may not withhold these documents in the hopes that plaintiffs will agree to a stipulation that raises serious fairness and selective disclosure concerns. In any event, the federal rules supply the requisite and appropriate framework here and Allergan has identified no reason the protections the relevant rules provide—including those Allergan invoked in the parties' negotiations—are insufficient.

As an initial matter, Allergan must decide what documents it contends are privileged, regardless of concerns about waiver.[41] Rule 26 requires Allergan to do so in order to shield discoverable documents from discovery. And even if Allergan voluntarily produces "borderline" documents, Allergan's purported waiver concerns are addressed by Federal Rule of Evidence 502(a), which limits subject matter waiver to those circumstances in which the disclosed and undisclosed information "ought in fairness to be considered together."[42] Subject matter waiver

---

[41] Fed. R. Civ. P. 26(b)(5)(A).

[42] Fed. R. Evid. 502(a)(3).

applies when "fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary."[43]

Rule 502(a) thus allows Allergan to do exactly what it has said it wants to do: decide without fear of subject matter waiver "whether to produce arguably privileged but otherwise insignificant documents rather than spend significant time and money fighting the issue in response to motions to compel."[44] But Allergan's proposed stipulation goes further: it would permit Allergan to selectively waive the privilege for certain documents. It would allow Allergan to produce privileged or arguably-privileged documents that support its case, while continuing to claim privilege over documents that do not—raising the very same fairness and selective disclosure concerns that animate Rule 502(a)(3), without providing the corresponding safeguards.

During the parties' meet and confer about the stipulation, Allergan pointed to non-waiver orders entered under Rule 502(d). But here the parties specifically negotiated privilege and confidentiality protocols at the outset in this case and, after careful and lengthy negotiations, Allergan agreed to a process governed by Rule 502(b), rather than 502(d).[45] Rule 502(d) negotiations occur at the beginning of the case so a party may "*plan in advance*" for privilege and work product review.[46] With about two months until the close of fact discovery, it makes no

---

[43] Fed. R. Evid. 502(a), advisory committee's note to 2008 amendment.

[44] The Sedona Conference, Commentary on the Protection of Privileged ESI, 17 Sedona Conf. J. 12 (2016); *Swift Spindrift, Ltd. v. Alvada Ins., Inc.*, No. 09 Civ. 9342 (AJN) (FM), 2013 WL 3815970 at *5-6 (S.D.N.Y. July 24, 2013) (Maas, M.J.) (disclosure of privileged material in discovery, without more, does not result a subject matter waiver).

[45] *See* Stipulated Confidentiality Order, ECF No. 58, at 11-12.

[46] Fed. R. Evid. 502(d), advisory committee's note to 2008 amendment (emphasis added).

sense to change the rules of engagement now, and Allergan has identified no meaningful reason

to do so.

## IV.    CONCLUSION

For the foregoing reasons, plaintiffs ask the Court to order Allergan to produce the

documents at issue.


Dated:  December 3, 2018

By:      */s/ Dena C. Sharp*                         By:      */s/ Kristen A. Johnson*
         Dena C. Sharp                                        Kristen A. Johnson

Dena C. Sharp                                        Thomas M. Sobol
Scott M. Grzenczyk                                   Kristen A. Johnson
Tom Watts                                            Jessica R. MacAuley
GIRARD SHARP LLP                                     Hannah W. Brennan
601 California Street, Suite 1400                    HAGENS BERMAN SOBOL SHAPIRO LLP
San Francisco, CA 94108                              55 Cambridge Parkway, Suite 301
Telephone: (415) 981-4800                            Cambridge, Massachusetts 02142
Facsimile: (415) 981-4846                            Telephone: (617) 482-3700
dsharp@girardsharp.com                               Facsimile: (617) 482-3003
scottg@girardsharp.com                               tom@hbsslaw.com
tomw@girardsharp.com                                 kristenj@hbsslaw.com
                                                     jessicam@hbsslaw.com
Joseph R. Saveri                                     hannahb@hbsslaw.com
Nicomedes Sy Herrera
Ryan J. McEwan                                       *Interim Lead and Liaison Counsel for the*
V Chai Oliver Prentice                               *Direct Purchaser Class Plaintiffs*
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940
jsaveri@saverilawfirm.com
nherrera@saverilawfirm.com
rmcewan@saverilawfirm.com
vprentice@saverilawfirm.com

Eric B. Fastiff
David T. Rudolph
Adam Gitlin
LIEFF CABRASER HEIMANN &

16

BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile:  (415) 956-1008
efastiff@lchb.com
drudolph@lchb.com
agitlin@lchb.com

*Interim Co-Lead Counsel for the End-Payor*
*Class Plaintiffs*

Dan Drachler (DD 1526)
Robert S. Schachter (RS 7243)
Sona Shah (SS 4712)
ZWERLING, SCHACHTER &
ZWERLING, LLP
41 Madison Avenue
32nd Floor
New York, NY 10010
Telephone:  (212) 223-3900
Facsimile:  (212) 371-5969
ddrachler@zsz.com
rschachter@zsz.cpm
sshah@zsz.com

*Liaison Counsel for the End-Payor Class*
*Plaintiffs*

17

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2018, I served the foregoing document via electronic

mail in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local

Rules, and/or Item 3.C of your Honor's Individual Motion Practices.

/s/ Dena C. Sharp
Dena C. Sharp